**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0014n.06

Case No. 19-5637

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| | ) | **FILED** |
| | ) | Jan 07, 2021 |
| UNITED STATES OF AMERICA, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| ALFREDO MARTINEZ, aka Freddy Luna, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| | ) | |

**BEFORE: SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Alfredo Martinez was convicted of conspiring to distribute 50 grams or more of methamphetamine and conspiring to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He now claims two procedural errors in the district court's sentence: first, that the court failed to apply a "safety valve" reduction to his offense level, and second, that the court failed to reduce his offense level for acceptance of responsibility. Additionally, he claims the court committed plain error by allowing an FBI agent to testify as an expert witness when the government did not disclose a summary of that agent's expert testimony.

We find these arguments to be without merit and **AFFIRM** Martinez's sentence.

**I**

In December 2016, the FBI learned that a drug distributor was receiving part of his methamphetamine and marijuana supply from Alfredo Martinez. During the summer of 2017, the FBI intercepted text messages of individuals involved in the drug trafficking operation. On July 13, 2017, Martinez sent a threatening text message to the drug distributor. Both men were subsequently arrested and charged with conspiracy to distribute methamphetamine and marijuana. Martinez proceeded to trial.

On June 13, 2018, the district court filed its scheduling order addressing the procedure regarding the disclosure of experts pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). Subsequently, the government disclosed its intention to call two chemists as expert witnesses but did not file a notice of its intention to call FBI Agent Hubbuch as an expert.

On November 29, 2018, the jury found Martinez guilty of one count of conspiring to distribute 50 grams or more of methamphetamine and one count of conspiring to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The presentence report indicated that Martinez's relevant conduct included the distribution of 7 kilograms of methamphetamine and 41 pounds of marijuana. This conduct and his prior criminal history placed him at an offense level of 40 and a criminal history category of II. At the sentencing hearing, Martinez objected to the presentence report, arguing that the evidence was only sufficient to attribute 4.5 kilograms to him, which would reduce his offense level from 40 to 38. The district court partially agreed and attributed 5 kilograms of methamphetamine to Martinez, which reduced his offense level to 38.

The district court then considered whether the First Step Act's recent amendment to the two-level "safety valve" adjustment for drug offenses applied to Martinez. The district court found

it would not apply because Martinez was convicted on November 29, 2018, about a month before the First Step Act was passed. However, the district court noted Martinez's "very little criminal history" and the fact that he was "literally a month away from qualifying for the safety valve under the First Step Act," and concluded he would grant Martinez "a variance based on that." The court confirmed that it would vary so that Martinez would be "in effect, getting treated as if the First Step applied to" him and he would have a guideline range somewhere between "210 and 262 months," consistent with an offense level of 36. Additionally, Martinez apologized for his conduct at the sentencing hearing, but did not move for an acceptance of responsibility reduction in his sentence.

The district court sentenced Martinez to 192 months' imprisonment. This appeal followed.

## II

### A. Procedural Error

We review sentences, whether within or outside of the advisory Guidelines range, for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Additionally, "we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). After announcing its sentence, a district court must "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). If a defendant does not raise a procedural objection at that time, we review the claim only for plain error. *Id.* at 872–73; *see also United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009). In determining whether a sentence is procedurally reasonable, we examine whether "the trial court follow[ed] proper procedures and [gave] adequate consideration to [the 18 U.S.C. § 3553(a)]

factors." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020)).

Here, Martinez raises two challenges to the district court's sentence: (1) he claims that the district court failed to apply a safety valve reduction, which the First Step Act recently amended, to his offense level, and (2) he claims that the district court failed to reduce his offense level for acceptance of responsibility. These two arguments challenge the procedural reasonableness of Martinez's sentence, and Martinez made none of them at the sentencing hearing below. Therefore, we review each argument for plain error. *See Bostic*, 371 F.3d at 872. So Martinez must show (1) error, (2) that "was . . . obvious or clear," (3) that "affected [his] substantial rights," and (4) that "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). None of Martinez's challenges clear this bar.

1. Safety Valve

No procedural error occurred regarding the district court's failure to apply the amended safety valve of the First Step Act of 2018. Under the sentencing guidelines, a "safety valve" provision allows for defendants to have their offense level reduced by two levels if they meet certain criteria. *See* U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a). Before the First Step Act of 2018, the first of these criteria required having no more than one criminal history point under the sentencing guidelines. *See, e.g.*, *United States v. Branch*, 537 F.3d 582, 591 (6th Cir. 2008). Section 402(a) of the First Step Act of 2018 expanded the eligibility for safety-valve relief by increasing the maximum criminal history points to four. *See* 18 U.S.C. § 3553(f)(1)(A). However, § 402(b) provides that "[t]he amendments made by this section shall apply only to a conviction entered on or after the date of enactment of this Act." *See* First Step Act of 2018, Pub. L. No. 115-391, 132

Stat. 5194, 5221. The Act was enacted on December 21, 2018, less than one month after Martinez was convicted at trial on November 29, 2018.

Martinez cannot show that the district court's sentencing decision regarding the safety valve "affected [his] substantial rights." *Koeberlein*, 161 F.3d at 949. To do so, Martinez must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (internal quotation marks omitted). At sentencing, Martinez had three criminal history points, which rendered him ineligible for the safety valve under the guidelines in effect at the time of his verdict. But the court decided to treat Martinez "as if the First Step applied to [him]" and varied downward two levels because Martinez was "literally a month away from qualifying for the safety valve under the First Step Act." Indeed, the district court stated it would "grant a variance based on" the proximity of Martinez's conviction to the passage of the First Step Act, and so he "receiv[ed] . . . essentially a guideline range that would get [him] in the 210 to 262 months" range, consistent with an offense level of 36. Thus, the court acted as though the First Step Act's safety valve applied in giving Martinez the two-level downward variance. Martinez received the very benefit he is now seeking on appeal, so no plain error occurred.

2. Acceptance of Responsibility

Martinez's claim that the district court committed plain error in failing to reduce his offense level for acceptance of responsibility also fails. "A defendant who 'clearly demonstrates acceptance of responsibility for his offense' is entitled to a two-level reduction to his offense level." *United States v. Calvetti*, 836 F.3d 654, 670 (6th Cir. 2016) (quoting U.S.S.G. § 3E1.1(a)). Martinez chose to go to trial, and the acceptance of responsibility reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential

factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010) (quoting U.S.S.G. § 3E1.1 cmt. n.2).

That is what occurred here. At trial during opening statements, Martinez claimed he was "innocent of these charges." Martinez admitted his guilt and expressed remorse, but only at the sentencing hearing following his conviction at trial. The presentence report indicated that Martinez had not demonstrated acceptance of responsibility. And most problematic to his claim, Martinez never asked the district court for a reduction based on acceptance of responsibility. Even if Martinez had asked for the reduction, the district court would have been within its discretion in denying the reduction based on Martinez's decision to proceed to trial and challenge the factual elements of his guilt. *See id.* We therefore can see no error in the district court failing to *sua sponte* grant Martinez this reduction.

*B. The Testimony of Agent Hubbuch*

Finally, Martinez argues that this case should be reversed and remanded for a new trial because the government failed to provide a summary of FBI Agent Hubbuch's expert testimony prior to trial. Because Martinez did not object at trial to the government's failure to disclose Agent Hubbuch expert testimony, we review this only for plain error. *See United States v. Nixon*, 694 F.3d 623, 628 (6th Cir. 2012).

Federal Rule of Criminal Procedure "16(a)(1)(G) requires that the government turn over, at the defendant's request, a summary of any expert testimony that the government intends to use during its case-in-chief." *United States v. Johnson*, 576 F. App'x 572, 574 (6th Cir. 2014). The government never provided a summary of Agent Hubbuch's expert testimony despite providing summaries of the two chemists' testimony it presented. However, Martinez never requested summaries as required by Rule 16(a)(1)(G). For this Court to find plain error, the defendant "must

6

show the occurrence of an obvious or clear error that affected his substantial rights and the trial's fairness, integrity, or public reputation." *United States v. Brown*, 737 F. App'x 741, 747 (6th Cir. 2018) (citing *United States v. Warman*, 578 F.3d 320, 345 (6th Cir. 2009)). "In order to show that the error affected his substantial rights, [Martinez] must show that the error was prejudicial, 'which means that there must be a reasonable probability that the error affected the outcome of the trial.'" *Id.* (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

We have addressed a similar situation before. This Court has held that "the Government's failure to properly notice [a detective] as an expected witness was harmless" and the defendant could not show plain error. *United States v. Ledbetter*, 929 F.3d 338, 348 (6th Cir. 2019). "[B]y failing to object below, defendants prevented the district court from curing the procedural notice violation with a less drastic remedy than requiring a new trial or precluding the evidence." *Id.* at 350. Additionally, we held that any "error did not seriously affect the fairness of the proceedings . . . because defendants were on constructive notice that the Government intended to put on evidence of this sort." *Id.*

So too here. Martinez offers no explanation as to why the government's failure to notice Agent Hubbuch as an expert witness affected his substantial rights or the outcome of the trial. Indeed, Martinez does not challenge the admissibility of Agent Hubbuch's testimony. Martinez didn't object below and therefore didn't give the district court a chance to seek a less drastic remedy than a new trial. And Martinez knew that Agent Hubbuch would be testifying as an expert because the Court announced it would give a limiting instruction regarding fact and opinion testimony before Agent Hubbuch testified (and did so).

Thus, Martinez cannot show plain error.

**III**

For the foregoing reasons, we **AFFIRM** the sentence of the district court.